Hillsborough, }
June 23, 1932. }

ROBERT J. DOYLE, *Adm'r v.* MACDONALD BROTHERS.

*Doyle & Doyle (Mr. Paul J. Doyle* orally), for the plaintiff.

*Ivory C. Eaton* (by brief and orally), for the defendants.

BRANCH, J.   The excavation in question was $14\frac{1}{2}$ feet deep and extended practically to the edge of the sidewalk on the north side of Factory street in the city of Nashua.   On the side next to this street was a rough wall of split stone.   Along the edge of the sidewalk above the cellar the defendants had erected a high board fence which, when intact, would obviously furnish adequate protection to pedestrians against the dangers incident to the presence of the excavation.   At the point of accident, however, several boards were missing, which left a hole in the fence $5\frac{1}{2}$ feet long and findably 39 inches high.   The bottom board of the fence, however, was in place so that the lower edge of the hole was 12 inches above the sidewalk.   Inside the fence opposite this opening and on top of the cellar wall was a section of cement sidewalk which had formerly constituted a part of the entrance to a building, which appears by the photographs and the unquestioned statements of counsel to have been more than 2 feet wide.

The case was tried upon the theory that the deceased in some manner found his way through this hole in the fence and fell into the cellar. The evidence will not support such finding.

The following summary of events leading up to the accident appears in the briefs of both parties and, therefore, may be accepted as accurate.

"Mrs. Rose Belanger and Mrs. Elizabeth Poirier left their home on Pine street on the morning of July 11, 1929, to go to Greeley Park, Nashua, for a picnic; they had their own children with them and other children belonging to their neighborhood; the older children went ahead and then came Mrs. Belanger and Mrs. Poirier with two baby carriages and the smaller children; they arrived at the upper end of Factory street in Nashua when Emile Silvane, the decedent, a boy about six and one-half years of age, started and ran to join the older boys ahead. Factory street curves between the mill office and the Avery company store so that what occurred at the place of the accident was not seen by either Mrs. Belanger or Mrs. Poirier. As they went along they heard someone crying and on going further found the little boy."

There were apparently no eye witnesses to the accident. The only evidence of what occurred is contained in the statements of the deceased as reported by Mrs. Belanger and Mrs. Poirier, which were admitted in evidence under the *res gestae* rule. Upon this point Mrs. Belanger testified as follows: "Q. What did the little boy say to you at the hole when he was crying? A. He told me he fell into the hole and he hurt himself across here. (Indicating.) Q. You mean across the stomach? A. Below, the abdomen." Mrs. Poirier's testimony was as follows: "Q. When you reached the place where the boy was . . . tell the jury . . . what the boy said. A. The boy said, 'I fell through the hole, and I hurt myself in here.' (Indicating.)"

Both women in their testimony gave the impression that only a brief period elapsed between the moment when they lost sight of the boy and the time when they found him crying at the hole in the fence. The verdict can be sustained only upon the theory that during this short interval he more probably than otherwise fell into the cellar, sustaining fatal injuries in the course of his descent, and then climbed to the top of a perpendicular stone wall 14½ feet in height. The equivocal statements attributed to the deceased that he fell "into" or "through the hole" will not support such improbable inferences, but they are entirely consistent with the conclusion that he fell across the board at the bottom of the hole in the fence and thus sustained the abdominal injuries of which he complained. There is no ground for the argument that in reaching this conclusion we set up our judgment in opposition to that of the jury, for an examination of the charge shows that no reference was made therein to the question of

causation, nor was the jury instructed to find definitely whether or not the deceased fell into the cellar.

The only "hole" described by either Mrs. Belanger or Mrs. Poirier was the hole in the fence, and there is no ground for the inference that any other hole was referred to in the statements of the deceased reported by them. Mrs. Belanger testified that when she found the boy crying, "he was standing on the side of the sidewalk over the hole." Later she described the hole in the fence and stated specifically that this was the hole "over" which he was standing when she saw him. Mrs. Poirier stated that after the boy ran out of sight she next saw him "when he start to get out of the hole . . . I saw him coming out of the hole, he was half way out, when I saw him." Subsequently she testified as follows: "Q. Can you give this jury any idea as to how big a hole that was? A. Well, I can't tell just what it was; it was pretty near two feet high and five feet wide." This was clearly the hole to which the witness referred when she said that the boy "was half way out" when she saw him. This statement could not possibly mean that he was half way up the masonry wall of the cellar, since in that position he would have been invisible to either witness.

The plaintiff in his brief does not definitely assert that the evidence justifies a finding that the deceased fell into the cellar. The only statements which we find regarding the manner in which he was injured are the following: "There was a large hole in the fence and the deceased, while running to catch up to some elder boys, fell through this hole and received the injuries from which he died. . . . There is ample evidence from which the jury properly found that the little boy received his injuries by falling through the hole and on account of his tender years, the question of his due care does not enter the case. The little boy was seen running after some older boys . . . and was seen crawling out of the hole in an injured condition."

If counsel here mean to suggest that the verdict can be sustained upon the ground that the fence itself in its then condition, apart from the proximity of the cellar, constituted a danger to public travel, the answer is that this ground of liability was not raised at the trial and consequently cannot avail to sustain the verdict now. *Hawes* v. *Chase,* 84 N. H. 170; *Bjork* v. *Company,* 79 N. H. 402, 407; *Gage* v. *Railroad,* 77 N. H. 289, 296.

In view of the conclusion reached above, it is unnecessary to consider the defendants' other exceptions.

*Judgment for the defendants.*

All concurred.